## Strangi *v.* Wilson, et al.

No. 39347          February 7, 1955          77 So. 2d 697

124

*J. D. Stennis, Jr.*, Biloxi, for appellant.

*Karl Wiesenburg,* Pascagoula, for appellees William C. Wilson and Lyna L. Wilson.

*Howard A. McDonnell, Arnaud Lopez,* Biloxi, for appellee August H. Parker, d/b/a August H. Parker Plumbing and Heating Company.

*Robert H. Oswald,* Pascagoula, for appellee City Lumber and Supply Company.

*Watts & Colmer,* Pascagoula, for appellees Back Bay Lumber and Box Factory, Saucier Brothers, and Rhodes Floor Covering.

KYLE, J.

This case is before us on appeal by Sam Strangi, complainant, from a decree of the Chancery Court of Jackson County establishing the order of priorities of the

claims of the appellant and other materialmen and sub-contractors against the funds due and owing to the contractor, G. A. Marshall, for the construction of a dwelling house in the City of Ocean Springs for W. C. Wilson and his wife.

The record shows that during the summer of 1950 Frank Haviland and Rose Mary D. Haviland, his wife, agreed to convey to William C. Wilson the land described as Lots 6 and 17 of the Edgewater Court Subdivision of the City of Ocean Springs, for the sum of $1,150. Wilson was a member of the armed forces of the United States at that time and was stationed at Keesler Field near the City of Biloxi; and after making arrangements for the purchase of the lots Wilson applied through William R. Barber of Gulfport for a Veterans Administration loan to enable him to purchase the lots and construct the dwelling house. A tentative approval of the loan for the sum of $8,800 was obtained. The value of the lot on which the building was to be located was fixed at $1,000. Wilson was to provide the sum of $1,200 in cash to be applied to the payment of the construction cost of the building which was not to exceed the sum of $9,000. Wilson then entered into a contract or agreement with G. A. Marshall, doing business as The Marshall Engineering Company, for the construction of a dwelling house on Lot 6 for the sum of $9,000.

After work had been started on the building, Joe Walsh, Marshall's foreman, learned that the Marshall Engineering Company would be unable to obtain a temporary loan for the financing of the project through William R. Barber; and Walsh approached the appellant, Sam Strangi, who operated a lumber yard in the City of Biloxi, for the purpose of having Strangi advance the necessary funds to defray the balance of the construction cost. Strangi agreed to finance the construction cost in an amount not to exceed $7,500 upon the condition that Wilson and his wife execute a note for that amount and a mortgage deed of trust on the lot on which the build-

ing was being erected to secure the payment of same. Walsh had the note and deed of trust prepared by William R. Barber, and had the Wilsons execute the note and deed of trust on February 16, 1951. The deed of trust was not filed for record, however, until July 30, 1951.

After the note and deed of trust had been executed, Strangi furnished building materials, upon Walsh's orders, and also money which was used in paying for labor on the job, and the work on the building proceeded without interruption. Strangi's bills for lumber and other building materials amounted to $3,106.59. The sums advanced by him for labor amounted to $4,487.08, making a total advancement of materials and money in the sum of $7,593.67.

The building was completed during the month of July, and at that time Strangi learned that there were claims due and owing by Marshall to other materialmen in the total amount of $2,916.56.

The $7,500 note signed by Wilson and his wife and payable to Strangi became due ninety days after date, and Strangi being unable to foreclose his deed of trust, because the legal title to the lot was still vested in the Havilands, filed his bill in the Chancery Court for the purpose of having the property subjected to the payment of the mortgage indebtedness due and owing to him. W. C. Wilson and his wife, Frank Haviland and his wife, G. A. Marshall, and William R. Barber, who had been named as trustee in the above mentioned mortgage deed of trust, and the above mentioned materialmen were named as parties defendant. The complainant in his bill asked that the deed of trust executed by Wilson and his wife to secure the payment of said note be held to constitute a first lien upon said Lot 6 of the Edgewater Court Subdivision, together with the improvements thereon, except as to the amount due Frank Haviland on the purchase price of the lot; and the complainant asked, that the legal title to the property be divested out of the

Havilands and be vested in a special commissioner for the purpose of having the property sold to satisfy the indebtedness due and owing to him. The complainant also asked that a decree be entered in favor of the complainant against Wilson and his wife for the amount due on the note. The complainant asked for a discovery by the defendants, Frank Haviland and William C. Wilson, as to the terms of the written contract entered into between them for the sale of said lot by Haviland to Wilson, and that the defendants be required to produce a copy of the contract.

The Wilsons in their answer admitted that they had entered into a contract with Marshall for the construction of a dwelling house on the lot which the Havilands had agreed to convey to them, and that they had executed the note and mortgage deed of trust to Strangi, copies of which were attached to the bill of complaint. But the Wilsons in their answer denied that they were liable for the payment of the $7,500 note for the reason that the note and deed of trust were conditionally delivered upon the premise that the building would be constructed and approved by the Veterans Administration and that a G.I. loan would be made ''which contingency was prevented from occurring by the deliberate act of the complainant, Sam Strangi, in filing this suit.''

The Wilsons made their answer a cross bill, and in their cross bill alleged that they had contracted with Marshall for the construction of the dwelling house for the sum of $9,000, that they had paid to Marshall the sum of $1,200, and that the balance which they owed to Marshall was $7,800; that the materialmen named in the original bill as codefendants had dealt directly with Marshall and had not given the required notice of their claims to the cross-complainants and were not entitled to a lien of any kind upon the property. The cross-complainants asked that their total liability to Strangi and the other materialmen be limited to the $7,800, and that the court determine the rights of priority between Strangi and the

other claimants, and that the cross-complainants be granted a reasonable time within which to effectuate a loan to satisfy the liens decreed by the court; and the cross-complainants asked that the deed of trust executed by them on February 16, 1951, to secure the payment of the $7,500 note be cancelled.

The materialmen, who had been named as parties defendant, filed their petitions of intervention under the materialmen's lien statute. The cause was heard by the chancellor on the pleadings and proof, and at the conclusion of the testimony the chancellor incorporated in his decree his findings of fact and his conclusions of law.

The chancellor found that Marshall had agreed to construct the house for Wilson for the sum of $9,000; and that Wilson had paid to Marshall during the months of January and February, 1951, the sum of $1,200 on the contract price, leaving a balance of $7,800 to be paid. The chancellor found that after Marshall's foreman had failed in his effort to obtain temporary financing of the project through William R. Barber, Strangi agreed to finance the balance of the construction cost of the building, not to exceed the sum of $7,500, provided Wilson and his wife would execute and deliver to him a note for that amount and a mortgage deed of trust on the property to secure the payment of same; and that Wilson and his wife executed the note and the mortgage deed of trust on February 17, 1951. The chancellor found that Strangi thereafter advanced to Marshall money for the payment of labor in the total sum of $4,487.08 (which included the sum of $203, for which check was issued on February 17, 1951), and building materials in the additional sum of $3,106.59, making a total of $7,593.67, and the chancellor found that, but for the financing of the project by Strangi, the house would not have been completed.

The chancellor also found that the other materialmen named in the original bill of complaint had furnished materials and services for which they had not been paid in amounts as follows: Saucier Brothers, $498.28; Rhodes

Flooring Carpeting Company, $287.00; Parker Plumbing Company, $520.00; City Lumber and Supply Company, $863.53; Back Bay Lumber Company, $649.00; and Combel Hardware Company, $98.45. The total amount of all of the unpaid claims was $10,510.26.

The chancellor found that Haviland and his wife resided on the land adjacent to the lot on which the dwelling house had been constructed; that they were familiar with the agreement that Wilson had entered into with Marshall for the construction of the dwelling house on Lot 6, and that they knew of the efforts that were being made to finance the construction of the dwelling house and had endeavored to assist Wilson in obtaining a loan; and that they had stated in open court that they intended to convey to Wilson Lots 6 and 17 for the price of $1,150, notwithstanding the agreement dated March 1, 1951, which had been executed long after the construction work on the dwelling house had begun; and the chancellor held that, in view of the above mentioned facts, they should be estopped from doing otherwise, and that they should be compelled to execute a conveyance of said lots to Wilson for the sum of $1,150, and that they should be given a lien on the property to secure the payment of said purchase price.

The chancellor held that the deed of trust and the note executed by Wilson and his wife to Strangi should be set aside and cancelled, "for the reason the conditions and circumstances under which they were executed were not such as to meet the legal requirements of valid and binding obligations." The chancellor held that out of the $7,800 due Marshall under the contract Strangi should be paid the sum of $4,284.08 as a reimbursement for the amounts advanced by him after February 17, 1951, for the payment of labor on the job, and that the balance of the $7,800 should be distributed pro rata among Strangi and the other materialmen and subcontractors.

The above mentioned findings were recited in the decree which the chancellor signed. The chancellor ordered that Wilson and his wife pay to Strangi, out of the balance of $7,800 which they still owed to Marshall, the contractor, the above mentioned sum of $4,284.08 as a reimbursement to him of the amounts advanced by him to Marshall for the payment of labor bills, and that they then pay to Strangi and the other materialmen and subcontractors pro rata the remaining part of the $7,800 as set forth in the decree. The decree also provided that Haviland and his wife immediately convey Lots 6 and 17 of the Edgewater Court Subdivision to Wilson, and that they have a first lien against the property to secure the payment of the agreed purchase price of $1,150. The court also awarded judgments to Strangi and each of the other claimants against Marshall for the balances found to be due them after the pro rata distribution had been made among them of the remaining part of $7,800, as stated above. And, lastly, the decree provided that Wilson should pay to the Havilands the said sum of $1,150 immediately, and that he be given sixty days from April 1, 1953, within which to obtain a loan for the permanent financing of the above mentioned $7,800 indebtedness; and the clerk of the court was appointed special commissioner to sell the property should Wilson fail to pay the amounts decreed to be paid by him, as provided in the decree.

From the above mentioned decree Sam Strangi, the complainant and cross-defendant, has prosecuted this appeal; and Naif Jordan, doing business as Back Bay Lumber and Box Factory, Saucier Brothers, G. H. Rhodes, doing business as Rhodes Floor Covering, and the City Lumber & Supply Company, materialmen, have filed cross-assignments of error.

The main points argued by the appellant's attorneys as ground for reversal on this appeal are that the court erred in holding that the $7,500 note and mortgage deed

of trust given to secure the same, which were executed by G. A. Wilson and his wife on February 16, 1951, in favor of the appellant, should be cancelled "for the reason the conditions and circumstances under which they were executed were not such as to make the legal requirements of valid and binding obligations," and in refusing to permit the appellant to recover the full amount of the $7,500 note, with interest and attorneys' fees, as provided therein, and in limiting the amount of the indebtedness owing by the Wilsons to the appellant for the payment of which the appellant was entitled to a prior lien superior to the lien of the subcontractors, to the $4,284.08 advanced by the appellant to Marshall for the payment of labor employed on the job.

The main point argued by the cross-appellants' attorneys in support of their cross-appeal is that the court erred in holding that the cross-appellee's claim for the sum of $4,284.08, which represented the amount advanced by the cross-appellee for the payment of labor, was entitled to priority over the claims of the materialmen and subcontractors, and in directing that the said sum of $4,284.08 be paid to the cross-appellee before any payment should be made to the cross-appellants.

In as much as our decision on these points will dispose of most of the other questions involved in this appeal, we shall discuss these points first.

We think that the chancellor erred in holding that the $7,500 note and mortgage deed of trust executed by W. C. Wilson and his wife to Sam Strangi on February 17, 1951, should be set aside and cancelled, "for the reason the conditions and circumstances under which they were executed were not such as to meet the legal requirements of valid and binding obligations." We are unable to determine from the decree itself what the conditions and circumstances were which in the chancellor's opinion rendered the note and deed of trust invalid; and the record, we think, fails to disclose any

such conditions or circumstances which would justify the cancellation of the note and deed of trust.

It is true that the deed of trust was not recorded until July 30, 1951; but the delay in recording the deed of trust did not affect its validity or the binding force of the obligation as between the parties to the instrument.

It is also true that Wilson and his wife averred in their answer that there was no consideration for the execution of the note and deed of trust. But there is no merit in this contention. The proof showed conclusively, and the chancellor found, that Strangi refused to advance the $7,500 for the payment of labor and material to enable the contractor to proceed with the construction of the building, unless Wilson and his wife would agree to bind themselves for the repayment of such advancements and secure the same by a mortgage deed of trust on the property. Strangi advanced the above mentioned sum of $4,487.08 in money for the payment of labor, and in addition thereto building materials of the value of $3,106.59. All of the advancements of building materials with the exception of building materials of the value of $378.95 delivered prior to February 17, 1951, were made in reliance upon the note and deed of trust executed by Wilson and his wife, and after receiving the benefit of the transaction the Wilsons are not in a position to assert that they are not bound by the obligation which they assumed to enable Marshall to complete the work on the house.

It is also argued, however, on behalf of some of the materialmen, that the chancellor was justified in holding that the deed of trust was invalid for the reason that the legal title to the lot on which the building was located was still vested in Frank Haviland and his wife, and that the Wilsons had no title to the property and could convey no title to the trustee. But the proof showed, and the chancellor found, as we have already stated,

that Frank Haviland and his wife had agreed to convey Lots 6 and 17 to the Wilsons for the sum of $1,150, and Frank Haviland so testified during the trial, and the chancellor found that the Havilands were estopped by their conduct from doing otherwise.

Haviland and his wife were not only estopped from refusing to carry out their agreement to convey Lots 6 and 17 to Wilson for the sum of $1,150, as the chancellor stated; but they were also estopped from asserting their title against Wilson's mortgagee.

"Where the owner of land knowingly stands by and permits his property to be mortgaged or sold by another to one who is, to the owner's knowledge, relying on the apparent ownership of the person executing the conveyance, such conduct, irrespective of who benefits by the transaction, will estop the owner from asserting his title against the mortgagee or grantee." 19 Am. Jur., p. 748, Estoppel, par. 91.

But the Havilands were entitled to a purchase money lien on the lots to secure the payment of the purchase price of $1,150; and the chancellor very properly recognized the superiority of that lien over the lien of Strangi's deed of trust and expressly provided in his decree that, in the event the property should be sold to satisfy the claims of the creditors, the $1,150 owing by Wilson to them should be paid out of the proceeds of the sale before any of the funds were applied to the payment of the other indebtedness.

So far as the Wilsons are concerned, they are in no position to deny the equitable title conveyed by them to the trustee in the deed of trust executed to secure the payment of the $7,500 note due and owing to Strangi. The Wilsons are estopped by their own deed from denying the title to the lot conveyed by them to the trustee. 19 Am. Jur., p. 606, Estoppel, par. 10; Meyers v. American Oil Co., 192 Miss. 180, 5 So. 2d 218; Perkins v. White, 208 Miss. 157, 43 So. 2d 897;

Walters v. Merchants & Manufacturers Bank of Ellisville (Miss.), 67 So. 2d 714.

In the case of Meyers v. American Oil Company, supra, the Court said: "Nothing is better settled in this state than the rule that the grantor and all persons in privity with him shall be estopped from ever afterwards denying that, at the time his deed of conveyance was executed, he was seized of the property which his deed purported to convey, and that mortgages and deeds of trust are within this rule. By statute, Sec. 2125, Code of 1930, the rule is extended even to quitclaim deeds. The effect of this doctrine of estoppel by deed is the same as if in the deed itself, or in the mortgage, there had been inserted with valid force the express provision that it then and there conveyed not only the title then possessed by the grantor in the property therein described, but all that he might thereafter acquire."

■■ ■ The deed of trust executed by Wilson and his wife to Strangi to secure the $7,500 note was not void, even though the legal title to the lot had not been conveyed to Wilson at the time of the execution of the deed of trust; and Strangi had a right to invoke the aid of a court of equity to subject the property to the payment of the indebtedness due and owing to him.

We think that the chancellor erred in holding that the note and the mortgage deed of trust given to secure the payment of same should be cancelled, and in refusing to permit the appellant to recover the full amount of the note, with interest and attorney's fee.

■■ ■ It is true that the chancellor found that Wilson had a contract with Marshall for the construction of the house for $9,000, and that Wilson had paid to Marshall $1,200, leaving a balance due of only $7,800, and that when the interest and attorney's fee are added to the principal of the $7,500 note the total amount of the mortgage indebtedness due and owing to Strangi will exceed the $7,800. But Strangi's suit against the Wilsons

is based upon the note and the mortgage deed of trust given to him by the Wilsons after the construction work on the house had been begun; and the Wilsons' liability to Strangi on the note and the mortgage deed of trust was not limited by the terms of the contract between Wilson and Marshall. The proof showed that the total amount of money and materials advanced by Strangi was $7,593.67, and that the entire amount was actually expended for labor and materials that went into the construction of the building. It is not claimed that any payments have been made on the note. Strangi was therefore entitled to a decree against the makers of the note for the sum of $7,500, with interest and attorney's fee as provided in the note, and for a foreclosure of the deed of trust.

We come now to a consideration of the claims of the subcontractors and other materialmen, who were named as codefendants in the original bill of complaint, and who have filed cross-assignments of error on this appeal. The main contention of their attorneys is that their claims should have priority over the claim of the appellant, Strangi, for the reason, first, that the appellant's deed of trust was not filed for record until after the job was completed and the lien of the appellant's deed of trust did not become effective as to innocent third parties until the deed of trust was filed for record; and, second, that the appellant, Strangi advanced money to the contractor Marshall and was therefore not entitled to a statutory lien under the rule laid down in Sadler v. Glenn, 190 Miss. 112, 199 So. 305.

Both of these contentions are in our opinion unsound.

When Wilson executed his promissory note for the sum of $7,500 and the mortgage deed of trust on the property to secure the payment of same, for the purpose of having Strangi advance money to the contractor for the payment of labor and materials to be used in the construction of the building in the sum of $7,500 and

Strangi made such advancements to the contractor, as he had agreed to do, Wilson was entitled to credit for the $7,500 as a payment on the contract price. Lake v. Brannin, 90 Miss. 737, 44 So. 65; Chancellor et al. v. Melvin et al., 211 Miss. 590, 52 So. 2d 360; Deposit Guaranty Bank & Trust Co. v. Weaver Lumber Co., et al., 215 Miss. 183, 60 So. 2d 598.

In the case of Lake v. Brannin, supra, the Court held that, where the owner had employed a firm of carpenters to make certain improvements on his residence for a stipulated price, and long prior to the time at which written notice was served on him by the appellees of any claim that they had against the contractors, such owner had obligated himself and became indebted to other materialmen for materials furnished by them which it was the duty of the contractors to supply, the amount due the contractors under the contract with the owner, which might be subjected to the payment of the appellees' claims, was necessarily reduced in amount by whatever sum the materials that had been obtained from such other materialmen amounted to.

In Chancellor et al. v. Melvin et al., supra, the Court said:

"In the absence of a statutory provision to the contrary, the owner may make payment to his principal contractor in any method and at any time they agree upon. Rockel, Mechanics' Liens (1909), Sec. 67; 57 C. J. S., Mechanics' Liens, Section 251. There are numerous cases in which the owner was held to have paid his contractor by giving him in good faith a promissory note for the amount due on the contract, even though the note was not paid until after stop notices had been given to the owner. McGranahan Lumber Co. v. Pyramid Asbestos & Roofing Co., Tex. Civ. App. 1929, 18 S. W. (2d) 224; Cramer v. Dallas Lumber Co., Tex. Civ. App. 1926, 283 S. W. 596; George E. Sealy Co. v. Ards Build-

ing Corp., 1926, 216 App. Div. 313, 214 N. Y. S. 768, affirmed in 1927, 244 N. Y. 505, 155 N. E. 899."

The claims of the subcontractors and other materialmen were claims against G. A. Marshall, the contractor. None of those parties dealt directly with Wilson, the owner. None of them gave notice in writing to Wilson of their claims against Marshall or took any action under Section 372, Code of 1942, until after this suit was filed. But, if such notices had been given before the house was finished, such notices would have been effective to bind Wilson for no greater amount than the amount due Marshall at the time the notices were given. The record shows that Wilson had paid to Marshall the sum of $1,200, and that Wilson had executed the $7,500 note to Strangi for money and materials to be used by Marshall in the construction of the building. After crediting Wilson with these two amounts, the only amount remaining in the hands of Wilson that could be bound for the payment of the claims of the subcontractors and other materialmen was $300. The $300 had not been paid at the time this suit was filed, and the subcontractors and other materialmen were entitled to have that amount in the hands of Wilson subjected to the payment of their claims.

The rule applied by the Court in Sadler v. Glenn, supra, which is cited in the briefs of the cross-appellants, has no application to the facts in this case. In that case Sadler had no dealings with White, the owner of the property, relative to the advancements of money which he agreed to make to Glenn, the contractor, to enable Glenn to pay for laborers, and White assumed no obligation to reimburse Sadler for the advancements made by Sadler to Glenn. In this case Strangi dealt directly with Wilson, the owner. Strangi declined to make the advancements of money and building materials to Marshall, unless Wilson and his wife obligated themselves directly for the payment of the $7,500.

For the reasons stated above, the decree of the lower court will be reversed and the cause remanded for further proceedings in conformity with the views hereinabove expressed. The Havilands should be required to convey to Wilson the lots mentioned above, as they have agreed to do, and the Wilsons should be allowed a reasonable length of time, as provided in the former decree, within which to obtain a loan for the purpose of paying to the Havilands the $1,150 purchase price of the lots, and for the purpose of paying to Strangi the mortgage indebtedness due and owing to him; and if the indebtedness is not paid within the time allowed the property should be sold under the orders of the court for the payment of the indebtedness. ▆▆ In the event it becomes necessary for the court to order a sale of the lots to satisfy the purchase money lien of the Havilands for the $1,150, provision should be made in the decree for the marshalling of the assets so as to protect the rights of Strangi whose mortgage lien does not cover Lot 17, but only Lot 6 and the improvements located thereon. Judgment should be entered against Wilson in favor of the subcontractors and other materialmen for the $300 balance due under the contract with Marshall, and said balance should be applied pro rata to the payment of the claims of the subcontractors and other materialmen entitled to share in the distribution thereof.

▆▆ ▆ In the event the property should be sold for the payment of the mortgage indebtedness due and owing to Strangi, the claim of Strangi for the principal sum of $7,500 should be given priority over the claims of the subcontractors and other materialmen for the $300 balance due and owing by Wilson under his contract with Marshall; but after the payment of the $7,500 principal due and owing to Strangi, the claims of the subcontractors and other materialmen for the $300 bal-

ance due and owing to Marshall should have priority over the additional amount due Strangi as accrued interest on the $7,500 note and as attorney's fee.

Reversed and remanded.

*McGehee, C. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.