BRIGHT *v.* MICHEL, et al.

No 42152 February 5, 1962 137 So. 2d 155

*Aaron L. Ford,* Jackson, for appellant.

740

*Smallwood, Darden & Sumners,* New Albany, for appellee.

GILLESPIE, J.

Appellant, Mrs. J. B. Bright, filed an original bill in chancery seeking the following relief: (1) A mandatory injunction requiring appellees, Mrs. Mary Ann Michel and her husband, Harold H. Michel, to remove encroachments from appellant's land; (2) damages for certain alleged trespasses, and (3) a prohibitive injunction enjoining appellees from trespassing upon or interfering with appellant's property, and other relief.

Appellees denied the allegation contained in the bill and alleged that any encroachment was acquiesced in by Mrs. Bright and that she was estopped from maintaining her action. A cross-bill for damages was filed with the answer. The pleadings are lengthy and need not be referred to in detail.

The chancellor filed an opinion in which he held that the east 25 feet of the 30 foot strip of land claimed by

Mrs. Bright was a dedicated street leaving a five foot strip owned by her between the west line of the street and the east line of the lot owned by Mrs. Mary Ann Michel, one of the appellees. He also held that Mrs. Bright was estopped to maintain an action as to the encroachments on said five foot strip. The chancellor denied damages to either party and divided the costs equally. A decree was entered according to the opinion dismissing the original bill and the cross-bill. Mrs. Bright appealed to this Court.

About twenty witnesses testified, some at great length. Each party introduced an engineer who had surveyed the properties involved. There was no substantial disagreement between the surveyors. Since the chancellor decided the issues in favor of the Michels, the facts are stated in the light most favorable to them. There is not much conflict in the testimony as far as the main issues are concerned, but where there was conflict the Michels' testimony must be accepted, and all permissible inferences which the chancellor could draw from the proof and circumstances must be considered as established facts.

In 1887 a partition suit was filed in the Chancery Court of Benton County involving 159½ acres of land. The chancery court ordered the commissioners to have the land laid off in lots and sold. Pursuant to the court's order, a surveyor named Wolff was appointed and made a map of the land, showing the highway, various streets, the railroad, and the lots and blocks. This map was attached to the commissioner's report as an exhibit thereto and a decree listing the numerous purchasers of the several tracts, according to the Wolff survey, was entered on May 8, 1888. The Town of Hickory Flat was incorporated on April 6, 1874, and re-incorporated on March 7, 1888, by act of the legislature. The Wolff survey is the only plat or survey of the Town of Hickory Flat in existence. There are several copies, one of which

is owned by Mr. and Mrs. J. B. Bright, and all the deeds to property in the Town of Hickory Flat have been written in accordance with said plat since 1888.

Several of the streets shown on the plat are named, but most of them were not. The northern tier of blocks of the Wolff survey are ten chains square and block one is the extreme northwest corner of the plat; block two lies immediately to the east. Between said blocks one and two an unnamed street 50 feet in width is shown on the plat. Highway No. 78 is the southern boundary of blocks one and two. For some 67 years a fence has been maintained in the center of the unnamed street lying between blocks one and two of the Wolff survey.

On June 1, 1948, John H. Goode and wife conveyed to Mrs. J. B. Bright a strip of land 30 feet wide off the east side of block one and extending north from the highway about 217 feet, together with other property north of said strip. The east 25 feet of this strip of land was within the unnamed street lying between blocks one and two. The chancellor found that Mrs. Bright actually acquired title to a five foot strip west of the street. The Town of Hickory Flat entered an order opening the street in question on November 13, 1959. For many years the real property in Hickory Flat had been assessed for taxes in accordance with the Wolff survey. Mr. Bright thereafter built certain lumber sheds and an office on the larger tract some 231 feet north of the highway. The unnamed street, a part of which was included in the deed from the Goodes to Mrs. Bright, had never been opened or used as a street when Mrs. Bright received the deed from the Goodes. In order to have access to his lumber business, Mr. Bright graded the west half of said street and improved it for a driveway leading to the lumber yard.

On July 29, 1953, John H. Goode and his wife conveyed to Mrs. Mary Ann Michel a strip of property immediately to the west of the 30 foot strip described

in the deed to Mrs. Bright, and on which the driveway had been constructed by Mr. Bright. This tract of land was about 231 feet north and south by 31.3 feet east and west. Mrs. Michel thought she was getting 35 feet but there was an overlap and she actually got only about 31.3 feet east and west. At the time Mrs. Michel bought her property, Mr. Bright, who was the agent of Mrs. Bright in all transactions herein mentioned, was present and assisted in measuring the tract purchased by Mrs. Michel and encouraged the transaction. Mr. Bright referred to the property being purchased by Mrs. Michel as a corner lot. Mr. Bright knew at that time that Mrs. Michel was buying the property for use by herself and her husband as a site for establishing a cafe. After Mrs. Michel bought her property, and in 1953, she constructed a cafe and residence on the south part with a concrete parking apron facing Highway 78. A part of this building encroached over onto the five feet which Mrs. Bright owned between the Michel property and the unnamed street. During the same year, Mrs. Michel constructed a septic tank next to the driveway constructed by Mrs. Bright. This septic tank was situated on the five foot strip owned by Mrs. Bright and extended into the unnamed street.

About that time Mrs. Michel also constructed a concrete gutter running north and south so as to take care of drainage. This was in the west half of the unnamed street and extended into the street about 4½ feet. Mr. Bright sold to Mr. and Mrs. Michel the materials for all the construction made by the Michels, amounting to more than $5,000. Mr. and Mrs. Bright lived near the Michel property. Mrs. Bright worked in the lumber business part of the time with her husband and she and her husband constantly used the driveway constructed on the said unnamed street while the Michels were constructing the improvements which encroached on Mrs. Bright's five foot strip of land.

In 1958, Mr. and Mrs. Michel constructed an addition to the cafe and residence which further encroached on Mrs. Bright's five foot strip of land. At the same time Mrs. Michel and her husband were constructing a motel on property they had acquired east of the unnamed street and they had agreed to and did purchase from Mr. Bright all the materials for the motel and for the addition to the cafe. Mr. Michel and Mr. Bright signed a price list of said materials in the presence of Mrs. Bright. Mrs. Bright loaned Mr. and Mrs. Michel $5,000 with which to construct the residence and cafe in 1953, and she also took a deed of trust for $4,000 in 1958 to secure the amount of materials her husband sold the Michels for construction of the motel and the addition to the cafe. While the addition to the cafe was in the foundation stage, with a few upright studs in place, Mr. and Mrs. Bright came by while Mr. Michel was working on the addition. Mr. Bright told Mr. Michel that it looked like he was getting over on the line and Mr. Michel told Mr. Bright that he knew what he was doing. There was no argument and the conversation was friendly. Mr. and Mrs. Bright did not request Mr. Michel to cease the construction and no direct assertion was made that the Michels were encroaching. After that conversation the Michels and the Brights continued on friendly terms and Mr. Bright continued to furnish materials for the construction of the addition which encroached on Mrs. Bright's property and for the construction of the motel.

Thereafter the Michels and the Brights fell out about a trivial matter. Charges and counter-charges of trespass and interference were made. Mrs. Michel made complaint that Mrs. Bright caused her to have a nervous breakdown. The Michels had Mr. Bright arrested. Mrs. Bright then filed this suit.

Mrs. Bright contends that she owned the street and that it had never been dedicated and if dedicated had

never been accepted, or had been abandoned. The first question is whether the chancellor was correct in holding that the east 25 feet of the strip of land described in the deed from the Goodes to Mrs. Bright was a municipal street.

██ ■ The alleged street in question was not dedicated formally. In Briel v. Natchez, 48 Miss. 423, this Court held that if the owner of urban property has laid it off into lots intersected by streets and sells the same with reference thereto, or with reference to a map or plat dividing it into squares, streets and alleys, such action will amount to a dedication of the streets and alleys to the public, and if at the time the town has no corporate existence, the right to use the streets and control over them will vest in the corporation as soon as the corporation is created. In Pan Handle Oil Company v. Trigg, 148 Miss. 306, 114 So. 625, it was held that streets could be dedicated without complying with the statutory requirements and that the sale of lots according to a plat showing lots and blocks with streets and alleys shown thereon was a dedication of the streets to public use. To the same effect is Luter v. Crawford, 230 Miss. 81, 92 So.2d 348. The fact that the street was not opened from the time of the making of the Wolff survey in 1887 until the driveway was built by Mr. Bright in 1953 did not constitute abandonment of the street. The opening of a street may be postponed until the improvements are necessary. Briel v. Natchez, supra; Meridian v. Poole, 88 Miss. 108, 40 So. 548. And adverse possession will not forfeit a municipal right to open a street after property has been surveyed and lots have been sold in accordance therewith. Witherspoon v. City of Meridian, 69 Miss. 208, 13 So. 843.

██ ■ We hold that the chancellor was amply justified in finding that the unnamed street involved in this suit was dedicated by the sale of the lands to various people by the commissioner in the partition suit in 1888,

said deed describing the several parcels by reference to the Wolff survey. The acceptance of said deeds and the recognition of the Wolff survey as being the proper reference in describing said lands in the years thereafter, and the assessment of said property for taxes in accordance with said survey, constituted an acceptance of the dedication of the streets shown on the map thereof.

The chancellor was also correct in holding postponement of the opening of the street in question did not constitute an abandonment of the easement. The record disclosed no intention on the part of the Town of Hickory Flat to abandon the easement.

 ██ The next question for decision is whether Mrs. Bright was estopped to complain of the encroachments erected on the five foot strip of land owned by Mrs. Bright lying between the Michel property and the street. If she was not estopped she was entitled to a mandatory injunction for removal of the encroachments and a prohibitory injunction enjoining the Michels from making further use of the five foot strip of land.

The chancellor was justified in finding the facts as already stated. He specifically found that some of the improvements, the septic tank, was so far over the line that there could be no question of it being beyond the Michel property. The Brights were unconcerned whether the Michels were encroaching on the Bright property. Mr. Bright sold all the materials for the construction which encroached, and Mr. and Mrs. Bright observed the encroachments being built. Mrs. Bright loaned the Michels the money for the original construction in 1958; therefore, the Brights profited from the construction and saw the improvements made, and no objections were made by the Brights until bad feeling developed between the two families.

The Michels were not as diligent as they should have been in ascertaining the east line of Mrs. Michel's property, but the record fairly discloses that they thought

their property was bounded on the east by the street and that their lot was a corner lot bounded on the south by the highway and on the east by the street which the Brights had opened and graded about five years before the Michels saw the property and bought their lot. There is nothing to indicate that the Michels were not in good faith in believing their improvements were being constructed on Mrs. Michel's property.

The chancellor gave this question careful consideration and concluded: ''I cannot in good conscience order a mandatory and prohibitive injunction as prayed for in the original bill herein, under the evidence and the law applicable thereto, and the same will therefore be denied.'' It clearly appears that the improvements erected by the Michels are valuable and that the injunctions prayed for would substantially lessen the value of said improvements. The inference is permissible that the failure to issue the injunctions will not damage the Brights to any considerable extent. In other words, the issuance of the injunctions would cause the Michels to sustain losses far greater than the loss the Brights would sustain if they are not issued. This is not the controlling consideration on the question of estoppel, but it is a significant one under the circumstances.

The authorities agree that every case of equitable estoppel must rest on the particular facts involved. The cases involving equitable estoppel vary as to the facts from case to case. If the owner of land with full knowledge, or with sufficient notice or means of knowledge, of his rights and of all the material facts, knowingly, though passively, looks on while another person expends money on the land under an erroneous opinion of title, it would be an injustice to permit the owner to exercise his legal rights against such other person. The owner is bound by the doctrine of equitable estoppel. Nixon's Heirs v. Carco's Heirs, 28 Miss. 414; Martin v. Hartley, 208 Miss. 112, 43 So.2d 875; 19 Am.Jur.,

Estoppel, Par. 34 and 62; Anno., 50 A.L.R. 668; Cf. Burton, et al v. Redmond, et al., 211 Miss. 158, 51 So.2d 210 and Strangi v. Wilson, 223 Miss. 122, 77 So.2d 697.

■■■ ■ The ownership of property and the right to have it protected in the courts is so deeply embedded in the law that the denial of such right is always a matter of grave concern to the courts. The application of the doctrine of equitable estoppel in cases of this kind deny that right, and the doctrine should be applied cautiously and only when equity clearly requires it be done. In this case the chancellor's opinion shows that his conscience rebelled against allowing Mrs. Bright to insist on her legal rights under the circumstances. He was justified by the evidence. We hold that all the requirements of the doctrine of equitable estoppel were satisfied and that the decree should be and the same is affirmed.

Other contentions are made in appellant's brief. All these have received careful scrutiny and we hold that on the entire record the case should be affirmed.

Affirmed.

*Lee, P. J.,* and *Kyle, McElroy* and *Jones, JJ.,* concur.