# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01173-COA

**THE PENNINGTON GROUP, LLC, JOE**         **APPELLANTS**
**PENNINGTON, HELEN PENNINGTON, AND**
**PENNIBUNKPORT INVESTMENTS, LLC**

**v.**

**PRIORITYONE BANK**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/07/2015 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | SEAN A. MILNER |
| | STEVEN PRICE NIXON |
| ATTORNEY FOR APPELLEE: | DEREK ANDREW HENDERSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | JUDGMENT ENTERED THAT APPELLEE HOLDS FIRST PRIORITY LIEN AS TO CERTAIN REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 02/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LEE, C.J., FOR THE COURT:**

¶1.     The Rankin County Chancery Court found that PriorityOne Bank held a first lien position over Helen Pennington, and that the foreclosure conducted by Helen was subject to PriorityOne's priority position. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On June 10, 2008, The Pennington Group LLC (TPG) executed a deed of trust to PriorityOne Bank, pledging a certain tract of real property located in Rankin County,

Mississippi, to secure the debt of Ridgeview Homes LLC for the amount of $80,454. On February 17, 2009, TPG executed a second deed of trust to PriorityOne, again pledging the same property to secure the debt of Ridgeview Homes for the amount of $151,129. And on October 31, 2011, TPG executed a third deed of trust to PriorityOne, pledging the same property to secure the debt of Depco Holdings LLC for the amount of $143,066.55. David Pennington signed all three deeds of trust as a manager of TPG. David was also a member and manager of both Ridgeview Homes and Depco Holdings. Depco Holdings was also listed as a member and manager of Ridgeview Homes. All three deeds of trusts were recorded in the Rankin County Chancery Clerk's Office.

¶3. On November 9, 2011, TPG executed four deeds of trust to Helen, David's mother, pledging the same property to secure the debt of TPG for the following amounts: $19,875.36; $56,000; $27,000; and $27,322.33. Each of the four deeds of trust indicated that interest on these loans began accruing on a date prior to November 9, 2011 – one dated as far back as December 22, 2005. There is no record, however, of any loan, promissory note, or check corresponding with these debts. These four deeds of trust were signed by Joe Pennington (Joe), David's father and Helen's husband, as a manager and member of TPG. The deeds were recorded on the same date, November 9, 2011, in the Rankin County Chancery Clerk's Office.

¶4. Depco Holdings defaulted on the 2011 PriorityOne loan. Consequently, PriorityOne instituted foreclosure proceedings in July 2012. It is undisputed that at that time, PriorityOne held first lien position on the subject property, and Helen held second lien position. The

foreclosure sale of the subject property was scheduled for August 23, 2012. During the bench trial, Joe Allbritton (Allbritton), senior vice president and loan officer at PriorityOne, testified that Joe approached him and requested that PriorityOne not follow through with the foreclosure. Allbritton also testified that Joe's request stemmed from the fact that TPG owned the subject property, and Joe owned TPG. According to Allbritton, Joe hoped he could "clean [the property] up and perhaps sell the lots."

¶5. At Joe's request, PriorityOne stopped the foreclosure and issued a $160,837.46 loan to TPG. Allbritton testified that the amount reflected the unpaid sums of Depco Holdings, minus interest Joe requested not to pay. On behalf of TPG, Joe executed a promissory note to PriorityOne Bank on August 22, 2012, which listed the same subject property as collateral for the loan. The promissory note also read: "Borrower acknowledges this Note is secured by 1st Deed of Trust covering [the subject property]." Allbritton testified that PriorityOne did not actually receive any cash money in this transaction with Joe. Rather, as part of the transaction, Joe signed a "Disbursement Request and Authorization" form on behalf of TPG, indicating how the funds were to be applied. Specifically, the form indicated that $160,607.46 was the "amount paid to others on Borrower's behalf." The document also indicated that the "specific purpose of the loan is: [a] REFINANCE OF BUSINESS DEBT." TPG also executed a deed of trust dated August 22, 2012, in favor of PriorityOne, pledging the same property as security interest for the loan. The deed of trust was signed by Joe and recorded on August 23, 2012.

¶6. In November 2013, PriorityOne received notice that Helen was foreclosing on the

3

subject property. PriorityOne notified Helen that it retained first lien position by way of its 2008, 2009, 2011, and 2012 deeds of trust, and that any foreclosure sale of the property was subject to PriorityOne's priority position. Helen responded that she held first lien priority, and she continued with foreclosure proceedings. The foreclosure sale took place on December 5, 2013. The winning bidder was Pennibunkport Investments LLC, which was created the same date of the foreclosure sale. Helen was the sole member and manager of Pennibunkport.

¶7. PriorityOne filed suit against TPG, Joe, Helen, and Pennibunkport. The chancellor held that PriorityOne had first lien position by virtue of its 2008, 2009, 2011, and 2012 deeds of trust, and therefore, the foreclosure conducted by Helen was subject to PriorityOne's priority. The Penningtons appeal, and we have condensed their issues as follows: (1) whether the chancellor erred in finding that PriorityOne held first lien position over Helen, and (2) whether the chancellor erred in finding that the entire proceeds of the 2012 PriorityOne loan were used to pay the 2008, 2009, and 2011 loans, and (3) whether the chancellor erred in finding that all of the debtors in this case were family.

## STANDARD OF REVIEW

¶8. This Court reviews a chancellor's factual findings under an abuse-of-discretion standard. *Stokes v. Campbell*, 794 So. 2d 1045, 1047-48 (¶9) (Miss. Ct. App. 2001) (citations omitted). "The chancellor's findings will not be disturbed upon review unless the chancellor was manifestly wrong, clearly erroneous or applied an incorrect legal standard." *Id*. We review questions of law de novo. *Graves v. Dudley Maples L.P.*, 950 So. 2d 1017,

4

1020 (¶14) (Miss. 2007).

## DISCUSSION

### I. Priority

¶9. The Penningtons argue that the chancellor erred when he held that PriorityOne had a priority lien position over Helen. Though the chancellor did not give a rationale for his holding, the Penningtons suggest that the chancellor found the 2012 PriorityOne loan to be a renewal of its previous loans, particularly given the chancellor's citation to *Smith v. Childress,* 119 Miss. 20, 80 So. 345, 346 (1919) (holding that a subsequent loan made as a renewal of a prior loan will keep the priority date of the deed of trust from the prior loan and prevail over an intervening lien holder). We decline to state whether the 2012 PriorityOne loan was a renewal as there was no renewal language in any of the loan documents. The ultimate issue—whether PriorityOne held first lien position—is an issue of law, which we review de novo.

¶10. In Mississippi, the priority positions of deeds of trusts are "governed by the priority in time of the filing of the several instruments." Miss. Code Ann. § 89-5-5 (Rev. 2011). A "deed of trust shall take effect, as to all creditors and subsequent purchasers for a valuable consideration without notice, only from the time when delivered to the clerk . . . ." *Id.* In other words, first in time is first in right. *Cmty. Tr. Bank of Miss. v. First Nat'l Bank of Clarksdale*, 150 So. 3d 683, 687 (¶10) (Miss. 2014). Here, it is undisputed by the parties that PriorityOne filed its 2008, 2009, and 2011 deeds of trust prior to Helen filing her four deeds of trust in 2011. It is further undisputed that at the time Helen filed her four deeds of trust,

5

PriorityOne held priority lien position over Helen. Then in 2012, PriorityOne issued another loan and filed a fourth deed of trust, calling into question its priority position.

¶11. Notwithstanding that both parties focus their arguments on whether the 2012 loan renewed the 2011 loan and deed of trust, to the extent that the 2012 PriorityOne deed of trust is secondary to Helen's deed of trust by virtue of the filing date, we find that equitable subrogation applies.

¶12. Equitable subrogation, which has been recognized and its application encouraged by the Mississippi Supreme Court, is the "doctrine whereby a court may . . . substitute a later-filed lien into the primary lien[-]holder position on a tract of real estate, such that the substitute creditor succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities." *Id.* at (¶11) (internal quotations marks and citations omitted). The supreme court has offered the following guidance on equitable subrogation:

> When determining whether equitable subrogation should apply, the controlling consideration is the actual facts. The question is: What is natural justice under the actual facts of the situation? Ultimately, determining whether equitable subrogation applies is done on a case-by-case basis. Above all, subrogation must be equitable to the parties involved. The determination of whether subrogation is applicable is a factual determination of each particular case with consideration of fairness and justice as its guiding principles. The doctrine of subrogation is one of equity and benevolence; its basis is the doing of complete, essential, and perfect justice between the parties, without regard to form, and its object is the prevention of injustice. It does not rest on contract, but upon principles of natural equity. Accordingly, although certain factors may weigh more heavily for or against subrogation, ultimately it is awarded only after carefully weighing all of the facts and circumstances and deciding what the fairest result would be.

*Id.* at 687-88 (¶12) (internal citations and quotations omitted).

¶13. With those guiding principles in mind, the relevant facts we must consider are as

6

follows. The 2012 PriorityOne loan was secured by a corresponding deed of trust for the same property. This property was owned by the same owner and allowed to be pledged by the same person for the debt of a family member's company. Also, the 2012 PriorityOne loan promissory note explicitly stated, "Borrower acknowledges this Note is secured by [first] Deed of Trust covering [the subject property]," indicating PriorityOne's continued priority lien position. Joe, in an effort to stop PriorityOne's foreclosure on TPG's property, authorized the 2012 loan amount to be applied toward the debt of his son David's company, as a "refinance" of business debt. The 2012 PriorityOne loan amount represented the unpaid sums owed by David's company, minus interest Joe requested not to pay.

¶14. Additionally relevant is that PriorityOne never cancelled its 2008, 2009, or 2011 deeds of trust. While it is true Mississippi Code Annotated section 89-5-21 (Rev. 2011) requires a creditor to cancel its deed of trust upon its receipt of full payment of the money due by the deed of trust, we find the following language from the supreme court to be instructive:

> It would be anomalous indeed to hold that a secured creditor loses his priority position when he *refinances* a debt such as this. It is true [section] 89-5-21 . . . requires [a secured creditor] to cancel its deed of trust upon its receipt of full payment of the money due by the mortgage or deed of trust . . . . The [subsequent loan] no doubt "paid" the earlier note in a formalistic sense, but it was hardly "full payment" within the language of the deed of trust nor the statutory imperatives . . . . Out of an abundance of precaution, [the creditor]—while leaving the [previous] deed of trust uncancelled and unsatisfied—took new deeds of trust [in subsequent years]. No sensible reason is offered why we should seize on this added security precaution and thereby render [the creditor] less secure.

*Shutze v. Credithrift of Am. Inc.*, 607 So. 2d 55, 60 (Miss. 1992) (emphasis added) (internal citation omitted).

¶15.    Helen testified at trial that she was aware that the property had been pledged to PriorityOne at the time she took her four deeds of trust. She also testified that she knew her husband, Joe, had met with PriorityOne to stop the foreclosure. Nevertheless, Helen foreclosed on the property owned by her husband's company, only for the property to be bought by a company owned by Helen herself. Under the particular facts of this case, it would be inequitable to hold that PriorityOne loses its priority lien position to Helen, the wife and mother of all the debtors to whom PriorityOne showed favor by stopping its foreclosure proceedings and issuing another loan—a loan whose specific purpose was to refinance the business debt of a family member's company.

¶16.    Again, though no rationale is stated, it appears the chancellor reached his decision by finding the 2012 loan to be a renewal. We do not say whether the 2012 loan was a renewal. However, we note that a "chancellor will be affirmed where he reaches a correct result under the law and facts, though for a wrong reason." *Reed v. Weathers Refrigeration & Air Conditioning Inc.*, 759 So. 2d 521, 526 (¶17) (Miss. Ct. App. 2000) (quoting *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987)). Moreover, "if the judgment of [the] court can be sustained *for any reason*, it must be affirmed, and even though the trial judge based it upon the wrong legal reason." *Id*. (emphasis in original)(quoting *Patel v. Telerent Leasing Corp.*, 574 So. 2d 3, 6 (Miss. 1990)). Here, we find that the chancellor reached the correct conclusion for all the aforementioned reasons. As such, we affirm the chancellor's finding that PriorityOne has a priority lien over that of Helen by virtue of its 2008, 2009, 2011, and 2012 deeds of trust, and that the foreclosure conducted by Helen was subject to

the first priority lien position of PriorityOne.

## II. Proceeds of the 2012 PriorityOne Loan

¶17. The chancellor found that the "entire proceeds of the [the 2012 PriorityOne] loan were used to pay the debts secured by the [d]eeds of [t]rusts dated June 10, 2008, February 6, 2009, and October 11, 2011." But the Penningtons argue that it is clear from testimony and evidence at trial that "the proceeds from [the PriorityOne 2012] loan to [TPG] were used for the sole purpose of paying off the [PriorityOne 2011] loan to [Depco Holdings]." There was, in fact, documentation indicating that the 2012 loan was used to pay off the 2011 loan. But Allbritton testified that PriorityOne was not paid on the 2008, 2009, and 2011 deeds of trust and, as a result, pursued foreclosure, reflecting a continued existence of the indebtedness on all three loans. Allbritton further testified that the "loan was not paid off" and "no collateral [was] released at all."

¶18. We note that "[o]ur appellate review is considered in the light most favorable to the party who found favor in the chancellor's ruling." *Elchos v. Haas,* 178 So. 3d 1183, 1187 (¶3) (Miss. 2015) (citing *Bright v. Michel*, 242 Miss. 738, 743, 137 So. 2d 155 (1962)). "If conflicting testimony is presented, all testimony favoring the [prevailing party] must be accepted, along with all permissible inferences which the chancellor could draw from the proof and circumstances, becoming established facts." *Id.* "Moreover, since the chancellor is best able to determine the credibility of the witnesses' testimony, it is not [an appellate court's] province to undermine the chancellor's authority by replacing the chancellor's judgment with our own." *In re Estate of Carter*, 912 So. 2d 138, 143 (¶18) (Miss. 2005).

¶19. In the instant case, the chancellor's finding was supported by substantial credible evidence. None of the three prior deeds of trust were ever cancelled to reflect their satisfaction, and foreclosure proceedings were initiated under the 2011 deed of trust—indicating Depco Holdings' continued indebtedness. PriorityOne testified that it never received any funds from David, and the loans were not paid off. Given the evidence before the chancellor, we cannot say that the chancellor erred in finding that the entire proceeds from the 2012 loan were used to pay the debts of the prior three deeds of trust. This issue is without merit.

### III. Relationship of the Parties

¶20. The Penningtons also argue that the record does not support the chancellor's finding that "all of the debtors herein are family undoubted[ly]." We are not persuaded. At trial, Joe testified that he was the owner of TPG, and he allowed the subject property to be pledged as collateral. The 2008, 2009, and 2011 deeds of trust, which pledged the subject property to PriorityOne, were all signed by David to secure the indebtedness of Ridgeview Homes and Depco Holdings. PriorityOne's counsel represented to the chancellor that both Ridgeview Homes and Depco Holdings were Joe's son David's companies. This assertion was not contradicted at trial or on appeal. In response to PriorityOne's complaint, the Penningtons admitted David was the member, manager, and principal of Depco Holdings. And though the Penningtons strongly contend that there is no evidence that Ridgeview Homes was also one of David's companies, records from the Secretary of State's Office demonstrate that David was in fact the owner. *See May v. State*, 240 Miss. 361, 127 So. 2d 423, 426 (1961)

10

(An appellate court "may take judicial notice of the official records of the Secretary of State."). The Penningtons' response also admitted that David was Helen's son, and at trial, Helen testified that Joe was her husband.

¶21. All of the deeds of trust in this case, whether executed to PriorityOne or to Helen, listed the same property as collateral to secure the debts of David's companies, Ridgeview Homes and Depco Holdings, or Joe's company, TPG. The chancellor did not commit manifest error by finding that "all of the debtors herein are family undoubted[ly]." This issue is without merit.

**¶22. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**

11