TWIN STATES REALTY CO. *v.* KILPATRICK.

(In Banc. Feb. 11, 1946.)

[24 So. (2d) 752. No. 36126.]

(In Banc. May 27, 1946.)

[26 So. (2d) 356. No. 36126.]

J. F. Galloway and Gardner & Gardner, all of Gulfport, for appellee, on motion to dismiss.

**Mize, Thompson & Mize,** of Gulfport, for appellant, on motion to dismiss.

**Mize, Thompson & Mize,** of Gulfport, for appellant, on the merits.

J. F. Galloway, Gardner & Gardner, and Oscar Backstrom, all of Gulfport, for appellee, on the merits.

**Griffith, J.,** delivered the opinion of the court on motion to dismiss.

Motion has been made to dismiss the appeal on the grounds (1) that the record was not filed in this Court

within six months after the rendition of the decree, and (2d) no citation was served on appellee or her counsel within that period. Both these grounds were considered in Farrish v. Davis, 124 Miss. 711, 86 So. 713, and held not to be good, in view of the fact that the appeal bond had been given in fulltime. The delay has been explained to the extent that, if not entirely satisfactory, has shown enough to escape the penalty of a dismissal.

Motion to dismiss overruled.

**Griffith, J.,** delivered the opinion of the court on the merits.

Appellee is the owner of three lots and the residence situated thereon in Beach Hurst, an addition to the City of Pass Christian. The deeds to her and to her predecessor in title contained a restriction that the lots should be used solely for residence purposes, and never for commercial purposes of any character whatever. Appellant, the original owner of all the property, and the owner yet of a few of the lots unsold, filed its bill against appellee charging her with operating a store on her lots and seeking an injunction aaginst the continued use for that purpose. Appellee demurred, and her demurrer having been overruled, an interlocutory appeal was allowed, and on consideration thereof the decree was affirmed and the cause remanded. Kilpatrick v. Twin States Realty Co., Inc., 193 Miss. 599, 10 So. (2d) 447.

On the return of the case appellee answered fully and made her answer in such terms as to allow proof in her behalf of the following facts:

On November 1, 1934, the lots in question were owned by W. C. Keenan, who on that date leased the property to appellee. It was appellee's purpose in renting the property to use it not only as a home for herself and family but also to put one of the main rooms of the residence to use as a tea room and gift shop. She did not know at the time she made the lease that there were

any restrictions upon such use, and when she moved into the residence, which was immediately following said date, she arranged the selected room as a sales room for antiques, and for novelties designed primarily for gift purposes, in addition to which she operated a tea shop, and in connection with both these objects she made her place a sort of cultural center where she had book reviews and lectures. There was no outward change in the residence as it had existed, and all the activities mentioned were conducted on the inside, and as to outward appearances there was but little or no indication of anything different from the ordinary residence of that size and character.

At about the time that appellee embarked upon the enterprise as above described, she proceeded to erect one or more display signs pointing to the place and its purposes, whereupon appellant's agent, who, throughout all the times herein mentioned, resided near the property, called appellee's attention to the fact that the property was restricted as aforesaid, and objection was made to the signs, but the testimony is to the effect that no objection otherwise was then made to what appellee was doing and none other was made for more than six years, as hereinafter further mentioned, although appellee continued throughout the entire period to use the property in substantially the same manner.

Appellee removed the signs, but patronage found its way to her place and her efforts met with a success which justified her in the purchase of the property from Keenan, which purchase was made on November 29, 1940. Up to the time of her purchase, and for the six years which had elapsed there had been no complaint about appellee's continued activities from any of the other owners of lots in the addition, as well as none from appellant; but in a few months after her purchase appellant did begin to complain and finally in August 1941 filed its bill of complaint, as already mentioned.

Upon a full hearing the chancellor dismissed the bill, making his written opinion a part of the decree. He based his action upon several different grounds, as we understand it, but we think the decree is so well sustained on the ground of estoppel by laches or acquiescence that none other need be mentioned. It is well settled that "a condition or limitation in a deed restricting or limiting to particular uses the property conveyed may be waived or abandoned by the subsequent conduct of the grantor so that a court of equity will not interfere to prevent its violations," from which it follows that a complainant seeking equitable relief against the violation of such a restriction must act with reasonable promptitude upon the discovery of the ground for complaint, as otherwise his laches may bar his right to relief.

No better statement of the rule or summary as applicable to restrictive covenants has been made than that by Rugg, J., in Stewart v. Finkelstone, 206 Mass. 28, 92 N. E. 37, 39, 28 L. R. A. (N. S.), 634 636, 138 Am. St. Rep. 370, from which we quote:

"There is no hard and fast rule as to what constitutes laches. If there has been unreasonable delay in asserting claims or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is asked. It would be contrary to equity and good conscience to enforce such rights when a defendant has been led to suppose by the word [or silence, or conduct] of the plaintiff that there was no objection to his operations. Diligence is an essential prerequisite to equitable relief of this nature. Quiescence will be a bar when good faith requires vigilance.

But so long as there is no knowledge of the wrong committed, and no refusal to embrace opportunity to ascertain facts, there can be no laches. Upon the discovery of infringement of rights, such reasonable expedition is required in their prompt assertion as is consistent with due deliberation as to the proper means for relief. On the other hand, one who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar failure to take the most instant conceivable resort to the courts. After the right has been invaded under circumstances, which would not defeat a plaintiff in seeking relief, and no substantial harm is shown to have accrued to the wrongdoer from delay, there is not the same imminent necessity for early enforcement of demands as exists before conditions have become fixed. Mere lapse of time although an important is not necessarily a decisive consideration. Within the somewhat flexible limitations of these general rules, what may be laches, in any case depends upon its peculiar facts.''

Looking to the stated rules and to the facts as sustained by the evidence, we think it was too late, after waiting more than six years and until appellee had invested her money in the purchase of the property, for appellant to complain, so far as any relief in equity in concerned. Considerably less time than this has been deemed sufficient as a bar in several cases in point, some of which may be found in the reporter's abstracts of the briefs, and to these we add Bigham v. Winnick, 288 Mich. 620, 286 N. W. 102, and see 2 High on Injunctions, 4th Ed., Sec. 1159.

Affirmed.

## PARTIALLY DISSENTING OPINION.

**Sydney Smith, C. J.,** delivered a partially dissenting opinion.

I seriously doubt the correctness of the decision in this case. The restriction on the appellee's use of this property for commercial purposes does not rest alone on the restriction therefrom contained in the deeds of her predecessors in title held valid on the former appeal herein, Kilpatrick v. Twin States Realty Company, 193 Miss. 599, 10 So. (2d) 447, but rests, also, on the covenant not to so use the property, into which she herself entered when she accepted her deed thereto containing this restriction, which inured to the benefit of the appellant, as will appear by necessary implication from Kilpatrick v. Twin States Realty Co., supra. After accepting this deed, and becoming a party herself to this covenant, it would seem that she should not now be permitted to say that although she agreed not to use the property for commercial purposes when she accepted her deed thereto, that she did not then intend, and is under no obligation, to observe it.