482 So.2d 1117 (1986)
Ruth HANS
v.
Tibbie Williams HANS, Joe P. Hans, & Lena Jane Hans Edwards.
No. 55261.
Supreme Court of Mississippi.
January 22, 1986.
Rehearing Denied February 12, 1986.
*1118 Thomas J. Wiltz, Biloxi, for appellant.
Eddie C. Williams, Pascagoula, for appellees.
Before PATTERSON, C.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the Court:
This suit to quiet title and cancel a cloud follows sad, but familiar lines. It is a family fight over property. The land in controversy consists of forty acres described as the NW 1/4 of the NW 1/4 of Section 29, Township 6 South, Range 5 West, Jackson County, Mississippi.
On July 25, 1940, Joseph E. Hans ("Eddie") conveyed this forty acres to his brother, Henry H. Hans, but Eddie continued to occupy the land. In 1953 Eddie married Ruth Hans, the appellant. Henry Hans died on December 26, 1963, and left his widow, Tibbie Hans, and two children, Joe Hans and Lena Hans Edwards.
In May of 1965, Eddie filed a suit to cancel a cloud on his title against his sister-in-law Tibbie and her two children, the appellees here. Henry was not a named defendant as he had already died.
In this 1965 suit, Eddie alleged that he sold Henry the land for $190.00 but that Henry never paid the consideration. Eddie also claimed title to the land in this action by adverse possession. The defense to the suit was that Henry had paid Eddie $190.00 and that Eddie's use of the property after 1940 was permissive. This action was dismissed by Eddie on December 4, 1967.
Then, on December 22, 1975, 12 years after Henry's passing, Eddie executed a correction deed to Henry conveying 1 square foot of property and attempting to cancel the original conveyance for 40 acres.
Our present suit was filed against Eddie by Henry's heirs on January 8, 1980. On the following December 29, Eddie died, and in July of 1981, Ruth, Eddie's widow, and the appellant here, was substituted as the party defendant.
Appellees allege title through the 1940 deed to Henry and contend that Eddie and Ruth continued to use the land by express permission of Henry and his heirs.
In answer, Ruth asserts the non-delivery of the 1940 deed and the affirmative defense of adverse possession, and further that this suit is barred by the statute of limitations.
The chancellor found that the 1940 deed had been delivered and that Eddie and Ruth only had permissive use of the land, *1119 and that the action was not barred by the statute of limitations.
The chancellor further found that Henry Hans and his late father, Rudolph Hans, Sr., had intended that Eddie be allowed to stay on the land and to give effect to that intention the chancellor declared a life estate in Ruth, the widow, but canceled the cloud and confirmed the title to the 40 acres in Tibbie Hans and her children.
Ruth appeals. The heirs of Henry Hans did not cross-appeal to challenge the life estate.

I.

THE QUESTION OF DELIVERY
The 1940 deed from Eddie to Henry was properly recorded but was in the possession of Eddie's widow, Ruth, who claimed to have had its possession since 1953.
The chancellor found that after recordation the deed was sent to Rudolph Hans, Jr., brother to both Eddie and Henry. Rudolph then delivered the deed to Henry. The record is silent as to how Ruth Hans got the deed, but the chancellor affirmatively found that there was never a retention of the deed by Eddie.
Two contrary rebuttable presumptions thus confront one another. First, possession of the deed by the grantor raises a presumption that the deed was never delivered to the grantee, and delivery is an essential element. Farmer v. Runnels, 244 Miss. 525, 142 So.2d 198, 200 (1962). However, in Martin v. Adams, 216 Miss. 270, 62 So.2d 328, 329 (1953), we find, "... while the recordation of a deed raises a presumption of its delivery, this presumption yields to the proof that the deed was never delivered."
Faced with these two presumptions and the conflicting evidence offered by the parties in an effort to overcome them, we cannot say that in finding that the appellees had overcome the presumption of non-delivery and that the appellant had failed to overcome the counter-presumption of delivery that the chancellor committed manifest error.
Our rule in this regard is too well established to bear repeating let alone to support a retreat from its soundness. We will not reverse a chancellor's finding of fact upon conflicting evidence unless he is manifestly wrong. Our cases in this regard are legion and we cite but one, Duane v. Saltaformaggio, 455 So.2d 753, 757 (Miss. 1984).
Appellant fails in her defense of non-delivery of the 1940 deed. Under this general assignment, appellant offered some evidence and seeks to argue that the 1940 deed was not an actual sale by Eddie but an accommodation in furtherance of a scheme to defraud potential creditors of Eddie's.
As to any claim that there was no consideration for the 1940 deed, we draw attention to Covington v. Butler, 242 So.2d 444, 447 (Miss. 1970), wherein we stated, "... a voluntary conveyance of land cannot be vacated at the instance of the grantor upon the ground that it was made without any consideration."
Also, this attack by the appellant upon the validity of the 1940 deed is barred by any of the statutes of limitations.

II.

IS THE APPELLEE'S ACTION BARRED BY THE STATUTE OF LIMITATIONS?
The appellant argues that under Mississippi Code Annotated §§ 15-1-7 and 15-1-9 (1972), our ten-year statute of limitations concerning land, this action accrued in 1940, or at least shortly thereafter, as the acts of Eddie were sufficient to give notice to them.
This argument overlooks the action itself, which was to cancel a cloud on title, the so-called correction deed of December, 1975. As such, the cause of action could not accrue prior to the existence of that 1975 deed.
*1120 Regardless of the acts of Eddie prior to the 1975 deed, no action accrued by virtue of those purported acts of dominion if, as appellees contend and the chancellor found, Eddie's use of the 40 acres was merely permissive.
Therefore, the cause of action accrued on December 22, 1975, and the suit was filed on January 8, 1980, and amended in July, 1981. This is well within the statute of limitations and there is no merit to this assignment.

III.

DID APPELLANT ESTABLISH AN ADVERSE POSSESSION CLAIM TO THE LAND?
Appellant's evidence to support her adverse possession claim includes: That Eddie was living on the land when they married in 1953; that she and Eddie lived there after their marriage; that Eddie moved an old house and rented it; that Eddie built a new house which he and his wife occupied in 1956; that Eddie made numerous improvements on the land; that Eddie took care of the hurricane damage to the trees and was repaid by the Federal government; that Eddie occasionally rented portions of the land and collected the rent; that Eddie posted the land against trespassers; that Eddie paid the taxes until 1951; that Eddie paid the taxes again after the "Corrective Deed" in 1975; and that Eddie had a lease between Texaco and Henry canceled.
Appellees produced evidence in support of their claim that Eddie only enjoyed permissive use. The chancellor then found permissive use and, therefore, no adverse possession.
It is true that under certain circumstances a grantor may adversely possess property against his own grantee, but where the parties are closely related to each other the proof of the adverse possession is not normally as easily established as when the parties are strangers. See Georgia Pacific Corporation v. Blalock, 389 So.2d 498, 501 (Miss. 1980).
The permissive use question before us involves a close factual determination. However, the fact remains that "... we have no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made by the Chancery Court." Johnson v. Black, 469 So.2d 88, 90 (Miss. 1985).
Here, the chancellor did have substantial credible evidence to base his findings of permissive use upon and as such this assignment is without merit.

IV.

WERE THE APPELLEES ESTOPPED OR BARRED BY LACHES OR UNJUST ENRICHMENT?

a.

LACHES
As stated in Twin States Realty Co. v. Kilpatrick, 199 Miss. 545, 26 So.2d 356 (1946),
There is no hard and fast rule as to what constitutes laches. If there has been unreasonable delay in asserting claims or if, knowing his rights, a party does not seasonably avail himself of means at hand for their enforcement, but suffers his adversary to incur expense or enter into obligations or otherwise change his position, or in any way by inaction lulls suspicion of his demands to the harm of the other, or if there has been actual or passive acquiescence in the performance of the act complained of, then equity will ordinarily refuse her aid for the establishment of an admitted right, especially if an injunction is asked. It would be contrary to equity and good conscience to enforce such rights when a defendant has been led to suppose by the word [or silence, or conduct] of the plaintiff that there was no objection to his operations.
199 Miss. at 553, 26 So.2d at 358.
However, in Continental Oil Co. v. Walker, 238 Miss. 21, 117 So.2d 333 (1960), this Court stated,

*1121 In the case of Hill v. Nash, 73 Miss. 849, 19 So. 707, this Court held that no claim is barred by laches until the limitation has attached, and that laches is no defense if the proceedings are brought within the prescribed period of limitation.
238 Miss. at 34, 117 So.2d at 337-38.
It should also be pointed out that it was 1978 before the appellees discovered the existence of the correction deed, and this suit was filed on January 8, 1980.
Therefore, since the appellees have seasonably brought the action under Mississippi Code Annotated § 15-1-7 (1972), and following the rule laid down in Continental Oil Co. v. Walker, supra, the doctrine of laches is not applicable.

b.

ESTOPPEL
The appellant cites Martin v. Franklin, 245 So.2d 602 (Miss. 1971), in support of the estoppel theory. In this case, Griffin owned property north of the road while Martin owned land lying south of this road. In the late 1950's the state eliminated an "S" curve between the two parcels of land, thus causing each party to have land lying north and south of the new road.
Subsequently, Martin and Griffin verbally agreed to swap land, whereby Griffin owned all land north of the road and Martin owned the land south of the new road. On February 23, 1968, Griffin sold a lot to Franklin, who had the property surveyed and began constructing a home.
Martin was present when the survey was done, but made no claim to the property. Martin's home was also within a few hundred yards of the Franklin property, and the construction site was easily visible from his driveway. The chancellor found that Martin waited until the construction was finished before making his claim of ownership to the property. This Court affirmed on the basis of estoppel. This Court stated,
In Quin v. Northside Baptist Church, 234 Miss. 51, 105 So.2d 151 (1958), this Court said, in quoting from an earlier case, that it is a rule of almost universal application that one who stands by and sees another purchase land or enter upon it under a claim of right and permits such other to make expenditures or improvements under circumstances which call for notice or protest cannot afterwards assert his own title against such person.
245 So.2d at 604-05.
The case of Bright v. Michel, 242 Miss. 738, 137 So.2d 155 (1962), states that,
The authorities agree that every case of equitable estoppel must rest on the particular facts involved....
... and the doctrine should be applied cautiously and only when equity clearly requires it be done.
242 Miss. at 749-50, 137 So.2d at 159.
The appellant argues that the appellees have been on notice for a long time and should have acted much earlier than they did, since Eddie made those improvements as mentioned in the facts.
The appellant cites the case of Stevens v. Hill, 236 So.2d 430 (Miss. 1970), presumably for the proposition that the appellees should have been put on notice by the improvements made and, as such, were under a duty to protest so as to overcome the estoppel theory. In Stevens, this Court stated, "Any notice sufficient to incite a party to inquiry is equivalent in law to notice of those further relevant facts which such inquiry, if pursued with reasonable diligence, would have disclosed." 236 So.2d at 434.
The appellees do not specifically rebut the estoppel argument, but rather choose to discuss the improvements made on the land. Their major assertion is that many of the so-called improvements consisted of maintaining the property rather than improving it. The examples are building fences, drilling new wells, digging drainage ditches, standing up damaged pecan trees, planting fruit trees, and enlarging arbors.
The appellees argue that the major improvement was the barn built in 1949. Even as to the barn, there was conflicting *1122 testimony as to who helped build and supply the materials for it.
Although the old house was moved and a new one constructed, one witness testified that the old home was suitable to live in, and that the present home was seriously dilapidated.
Both Eddie and Henry had died by the time this case was heard on the merits. We have no firsthand knowledge of whether the brothers had agreed that Eddie maintain and improve the property while permitted to remain on the premises. Nevertheless, the chancellor was faced with the situation and as the trier of the facts chose to believe that the testimony tended to show permissive use. For the reasons above cited, this assignment has no merit.

c.

UNJUST ENRICHMENT
The appellant, in support of her argument that the chancellor's decision allows unjust enrichment of the appellees, relies heavily upon Hewlett v. Henderson, 431 So.2d 449 (Miss. 1983).
However, it is a rule of almost universal application that questions of whatever nature not raised in the trial court and preserved for review will not be noticed on appeal. Hassie Hunt Trust v. Proctor, 215 Miss. 84, 96, 60 So.2d 551, 558 (1952).
The question of unjust enrichment was not mentioned in the pleadings and is presented here for the first time.
What is unjust enrichment? Generally speaking, it is an equitable theme running throughout the law, closely associated with implied contracts and trusts.
One definition is found in 66 Am.Jur.2d Restitution and Implied Contracts, § 11 (1973), where it is stated:
The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong.
Thus, the question would appear to become whether or not the appellees, in good conscience and justice, should be allowed to retain the property, and, if they are allowed to do so, would they be unjustly enriched?
The best way to determine the question is to view the obvious and see whether a resulting or constructive trust may be implied under the facts of this case.
Recently in Allgood v. Allgood, 473 So.2d 416 (Miss. 1985), this Court discussed the question of trusts. In that case, a son brought an action against his mother claiming title to real property and mineral interests. The mother had purchased 13 acres of land from another son, and had the property titled in her name. However, the other son, who was the plaintiff, paid the installments for the purchase price. The chancellor found that "a trust arose by implication of law ... for the beneficial interest of the [son]." 473 So.2d at 420. This Court affirmed, stating:
A constructive trust is a means recognized in our law whereunder one who unfairly holds a property interest may be compelled to convey that interest to another to whom it justly belongs. Sojourner v. Sojourner, 247 Miss. 342, 353, 153 So.2d 803, 807 (1963); ... It prevents unjust enrichments.
Such a trust arises by implication from the relationship and conduct of the parties and may be established by parol testimony notwithstanding the statute of frauds. Triplett v. Bridgforth, 205 Miss. 328, 349, 38 So.2d 756, 764 (1949); ... Substantial overreaching or fraud must be shown. Pitchford v. Howard, 208 Miss. 567, 583, 45 So.2d 142, 147 (1950).
Proof of facts necessary to establish a trust by implication of law, i.e., a constructive or resulting trust, must be clear and convincing.
473 So.2d at 421.
Once again we come face-to-face with the determination that the use of the *1123 property by Eddie was permissive. If Eddie and Henry had agreed upon permissive use, there could be no overreaching or fraud on Henry's part since Eddie made the improvements with Henry's permission. This is what the chancellor found and as stated over and over again "findings of fact made by a chancellor which are supported by credible evidence, may not be set aside on appeal." Allgood v. Allgood, 473 So.2d at 421.
Furthermore, the permissive use finding also precludes the creation of an implied or quasi contract, just as it overcomes the argument of estoppel.
There is no merit to this assignment.

V.

DID THE CHANCELLOR ERR IN EXCLUDING EVIDENCE AS TO THE CLAIMS OF OWNERSHIP OF EDDIE AND THE APPELLANT?
While the appellant admits that there is substantial and considerable other evidence in the record to reflect the true situation, appellant still contends that the court committed reversible error in three specific instances on the question of whether or not Eddie ever claimed the property as his own.
In the first instance, the appellant was asked whether Eddie claimed ownership of the property. This question was met with an objection based on the fact that Eddie was deceased and that the answer would be hearsay. It was argued that Eddie's claim of the property was an important element as to adverse possession. The chancellor recognized that in order to properly address the objection it must be determined whether the appellant was asserting a claim on behalf of the estate or in her own right. The chancellor decided to regard this as a claim by the appellant as an heir to the property.
The appellees then objected to any "transactions, conversations, or actions affecting the use of this land prior to the time that Henry died, as being barred by the deadman's statute." Appellees argued that the statute should apply, since the appellant is asserting a direct claim against an asset of Henry's estate.
The chancellor correctly noted that the estate of Henry was not a party to the action but the appellees argue that that does not matter as long as the property was a part of the estate when Henry died.
The chancellor allowed the appellant to testify as to what she did and saw her husband do, but did not allow her to testify as to any statements that Eddie made because of the hearsay rule. This determination the chancellor made in reliance upon our decision in Mizell v. Black, 369 So.2d 755 (Miss. 1979).
The next point argued by appellant took place during the testimony of Jerry Harris. Harris's answer that Eddie did all of the things that would normally be associated with ownership of property was met with an objection on the basis of a conclusion by a witness and hearsay. The chancellor overruled the objection, but sustained that part dealing with hearsay.
The third instance revolved around Wally Cox's testimony when he was asked whether Eddie claimed ownership of the property. An objection was made and sustained.
In Mizell v. Black, supra, Mizell filed a complaint alleging that she was the owner, based on adverse possession, of 78 acres, rather than Black, who claimed the property under a quitclaim deed. Mizell attempted to testify as to what she had seen her deceased husband do in regard to the 78 acres. An objection was made to this testimony based upon Mississippi Code Annotated § 13-1-7 (1972), the so-called deadman's statute. This Court reversed the chancellor's finding, and stated,
The excluded evidence of [Mizell] did not relate to statements made by her deceased husband or anything other than what she saw her husband do over the years and what she assisted him in doing. The question of hearsay testimony is not involved.
369 So.2d at 756.
Thus, under Mizell, the chancellor was correct in allowing some of the testimony *1124 but excluding that testimony that would be hearsay.
We further point out, however, that the chancellor did allow Esther Rockwell to testify that the reputation and tradition of the property over the years was that it was Eddie Han's place.
We point out that, while appellant strongly urges in her brief that statements or declarations of Eddie should have been admitted, none were offered. It appears that the appellant was less than slightly wounded by the chancellor's rulings and that under the authority of Mizell, and Stennis v. Stennis, 218 So.2d 716 (Miss. 1969), which deals with self-serving statements of decedent, and the further fact that other testimony involving Eddie's claim and actions in regard to the property were admitted into evidence, that this assignment is without merit.

VI.

WAS THE CHANCELLOR MANIFESTLY WRONG IN HIS FINDINGS OF FACT?
No cases are cited in support of this argument by appellant, other than the bald statement that adverse possession should lie and that the facts negate a finding of permissive use. Once again, the standard under this assignment as stated most recently in Johnson v. Black, 469 So.2d 88 (Miss. 1985), is that this Court has "no authority to grant appellant any relief if there be substantial credible evidence in the record undergirding the determinative findings of fact made in the chancery court." 469 So.2d at 90.
In summary, we find that:
1. In deciding whether there was a valid delivery, the chancellor had two presumptions to construe, namely, that recordation of a deed raises a presumption of delivery, and the retention of a deed by the grantor raises a presumption of non-delivery;
2. The cause of action definitely accrued, at the earliest, in 1975, and the suit was timely filed under Mississippi Code Annotated § 15-1-7 (1972);
3. The chancellor had substantial credible evidence to find permissive use on the part of Eddie;
4. Laches would not lie since the action was brought within the time limit set by § 15-1-7, and under Bright v. Michel, supra, each case must rest on its own bottom when dealing with the argument of estoppel; and
5. There was ample evidence admitted to show Eddie's claim of ownership of the property, notwithstanding the fact that the chancellor disallowed some evidence from admission to the record.
Under the facts of this record and the present state of our law, we find no reversible error, and the decision of the Chancery Court is, therefore, affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and ANDERSON, JJ., concur.