# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-00056-SCT

*GLADYS PHILLIPS KNIGHT*

*v.*

*PATRICIA B. MINTER, DONALD G. BAIN, BERYL J. SHOWS, MAE REE SHOWS THOMPSON, CURTIS C. SHOWS, VALDA L. SHOWS SIZEMORE, RUTH BYRD, MARION LAURICH, LAMAR McDONALD, CLARA EVANS, EDNA T. (TIMS) TISDALE, DOROTHY T. SCOTT, EVELYN DEITZ, DOVIE H. LAWSON, BETTY JEAN TIMS BREAZEALE, CHARLES R. HOLIFIELD, FRANCIS PEARSON, CHARLES McKAY TIMS, SR., VIRGINIA ANN TIMS CANNON, LARRY HOLIFIELD, PAULINE BALD, WAIDE J. GALLE, FREDERICK RAY ROMAN, KENNETH LARRY ROMAN, RICHARD STEVEN ROMAN, MICHAEL ALLEN ROMAN, MERROLYN JOY TIMS SPICER, JEWEL L. SALATHE, HAROLD LEON MORSE, MAE REE SHOWS THOMPSON, CONSERVATOR OF LLOYD JONES SHOWS, WILLIAM E. TIMS, II, HELEN CLAUDINE MORSE COOK, JIM HOLIFIELD, HAZEL MILDRED MORSE ADAMS, FAY ETTA MORSE RHODES, CORLEY WILLIAM MORSE, JR., HERMAN JOSEPH TIMS, OTIS RAY TIMS, ELVA KAYE TIMS LANCE, GERTRUDE HIATT KIITTRELL, AND ALL OTHER KNOWN OR UNKNOWN HEIRS OR DEVISEES OF C. J. SHOWS AND/OR LENA SHOWS, BOX ENERGY CORPORATION, MURCO DRILLING CORPORATION, ROUNDTREE & ASSOCIATES, INC., HUNT REFINING COMPANY, MILLER OIL CORPORATION, HOWARD LAWSON, BETTY LAWSON, VERA SUE LAWSON, BENNIE L. LAWSON, JR., SUSAN ELIZABETH UTZMAN, BRYAN UTZMAN, SCOTT UTZMAN, MICHAEL UTZMAN, CONSTANCE EVELYN LAWSON, PATRICIA LEE LAWSON, NANCY JEAN LAWSON, CHARLIE LAWSON, MARGARET ELIZABETH ANDERSON AND C. W. (TIKE) MORSE*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/1998 |
| TRIAL JUDGE: | HON. FRANKLIN C. McKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WALLACE R. GUNN |
| ATTORNEYS FOR APPELLEES: | WATTS CASPER UELTSCHEY |
| | A. JERRY SHELDON |
| | GUY M. WALKER, II |
| | C. GLEN BUSH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/24/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/15/99 |

## BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

## I. INTRODUCTION

¶1. At issue in this case is title to a one-half (½) mineral interest in a twenty (20) acre tract of land located in Jones County, Mississippi. The current surface owner asks this Court to determine what mineral interest passed to her predecessor in title, the original grantee under a 1944 warranty deed which incorrectly recited a prior sale of three-fourths (3/4) of all minerals under the twenty (20) acre tract, when in fact only one-fourth (1/4) of all the minerals under the twenty (20) acre tract had been previously sold. The Jones County Chancery Court construed the language within the "four corners" of the 1944 warranty deed to unambiguously convey only one-fourth (1/4) of the minerals to its grantee, with the remaining one-half (½) mineral interest being reserved to the grantors. We affirm.

## II. FACTS

¶2. In 1925, C.J. and Lena Shows (Shows) obtained fee simple title to a 184 acre parcel of land in Jones County, Mississippi (subject land) with all mineral interests. In 1937, the Shows conveyed a one-half (½) mineral interest in *part* of the subject land to C.R. Ridgeway; however, the legal description used in this conveyance failed to describe a 20 acre tract (tract at issue) located within the subject land, said tract at issue lying at the heart of this controversy. In 1940, the Shows conveyed a one-fourth (1/4) mineral interest in the entire 184 acre subject land, including the 20 acre tract at issue, to J.S. Wheliss, Jr. After this transfer to Wheliss of the one-fourth (1/4) mineral interest, apparently unknown to all, the Shows owned three-fourths (3/4) of the minerals in the 20 acre tract at issue and one-fourth (1/4) of the minerals in the remainder of the 184 acre subject land. In 1944, the Shows conveyed, by warranty deed, the entire subject land (including the 20 acre tract at issue) to W.W. Knight. The only language appearing in the deed between the description and the signature and date lines stated "[i]t is understood by the grantee herein that I have heretofore sold three-fourths (3/4) of all mineral interest in, on or under the above described land." Gladys Knight (Knight) eventually obtained W.W. Knight's title in the subject land, and she filed this action to remove cloud on title to the one-half (½) mineral interest in the 20 acre tract at issue against the heirs of C.J. and Lena Shows (the Shows Heirs) as well as several oil companies which either drilled on the tract at issue or purchased oil produced from the tract at issue (oil companies). These oil companies obtained leases for the subject tract from both Knight and the Shows Heirs; therefore, they are merely stakeholders in this controversy. The Chancery Court of Jones County granted summary judgment in favor of the Shows Heirs, finding that the language within the four corners of the 1944 Shows to Knight deed unambiguously reserved one-half (½) of the minerals in the tract at issue unto the Shows. Knight, seeking relief from this order of summary judgment, raises the following assignments of error:

**I. The trial court erred in some of its factual findings on Summary Judgment.**

**II. The trial court erred when it used the four corners doctrine and classified the language in the Shows-Knight deed as a clear explicit exception, when in fact it was a simple untrue statement referring to no interest and creating no interest, as to the subject twenty, and the Shows-Knight 1944 deed conveyed to W. W. Knight a 3/4ths interest in the disputed twenty.**

**III. There are certain minimum rules of conveyance which must be followed, and they should**

**not be destroyed by the doctrine of determining the effect of a deed. The trial court erred in holding that it would be inequitable to enlarge grantee's interest, since Shows had already granted a full interest, to Knight in his warranty.**

**IV. Grantee Knight and his successor, Gladys Knight, are not estopped from contesting the efficacy of that which is relied on by grantor Shows and his heirs as removing or otherwise keeping said disputed one-half mineral interest in said twenty from being conveyed by said 1944 Shows-Knight deed.**

**V. The warranty in said Shows-Knight deed prevents Shows and/or his heirs from attacking Knight's title to the interest which is the subject of this action in said twenty.**

¶3. Because assignments I and IV are not dispositive on the issue at hand, they will not be discussed below. Furthermore, it should be noted that none of the parties herein argue that W.W. Knight and the Shows made a mutual mistake.

### III. LEGAL ANALYSIS

¶4. "This Court employs a de novo standard of review in reviewing a lower court's grant of a summary judgment motion." ***Short v. Columbus Rubber & Gasket Co.,*** 535 So.2d 61, 63 (Miss.1988). "Evidentiary matters are viewed in the light most favorable to the nonmoving party." ***Palmer v. Biloxi Reg'l Med. Ctr., Inc.***, 564 So.2d 1346, 1354 (Miss.1990). "If any triable issues of fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed." ***Brown v. Credit Ctr., Inc.***, 444 So.2d 358, 362 (Miss.1983). As the facts of the case at bar are undisputed, there are no triable issues of fact. The issue in this case is whether or not the one-half (½) mineral interest in the 20 acre tract at issue, which the Shows attempted to convey to Ridgeway in 1937, became vested in their subsequent grantee, W. W. Knight, by the 1944 warranty deed which stated "[I]t is understood by the grantee herein that I have heretofore sold three-fourths of all mineral interest in, on or under the above described land." This Court is called upon to interpret the effect of the 1944 Shows to Knight deed. The validity of the 1937 Shows to Ridgeway deed is undisputed by the parties herein; therefore, this Court will not examine said deed any further. At first glance, there appears to be a conflict in our law regarding the issue now before the Court. However, upon closer review, it becomes apparent that this is not so.

¶5. One case relevant to the case sub judice, which is relied upon by Knight, is ***Miller v. Lowery***, 468 So. 2d 865 (Miss. 1985). In that case, Miller, owning fee simple title to a tract of land, conveyed it to Pace, using a warranty deed containing the following clause: "[s]ubject to the reservation of all oil, gas and other minerals in, on and under the above described land by prior grantors." ***Miller***, 468 So. 2d at 866. However, there were no such reservations by any prior grantors. Miller claimed that the "subject to" language in her conveyance to Pace severed the mineral rights and reserved them in her favor. This Court, however, ruled that because the mineral rights had not previously been severed, the clause did not reserve them in her favor, but rather only protected her warranty of title. ***Miller***, 468 So. 2d at 867. "We find that this clause is not, nor has it ever been, sufficient to reserve mineral rights without a formal severance." ***Id.*** Consequently, this Court affirmed the trial court's ruling that Miller conveyed all of the mineral rights in the 1977 conveyance to Pace.

¶6. Another case relevant to the case sub judice, which is relied upon by the Shows Heirs, is ***Wilson v. Gerard***, 213 Miss. 177, 56 So. 2d 471 (1952). In that case, Gerard conveyed a tract of land to Wilson by

warranty deed containing the following language: "subject to one-half interest in mineral and oil rights as conveyed to William Henderson." *Wilson,* 213 Miss. at 183, 56 So.2d at 472. However, no such conveyance to Henderson had ever been made, and because of this, Wilson argued that this one-half (½) interest became vested in him through the warranty deed. This Court disagreed, holding that title "remained in the Gerards and the conveyance to a nonexistent grantee would have left the title remaining in the said grantors."*Wilson*, 213 Miss. at 186, 56 So.2d at 473. "[A]n exception will be good as to property recited to have been previously sold or conveyed, although the recital is false." *Id.*

¶7. The difference in the *Miller* case, on which Knight relies, and the *Wilson* case, on which the Shows Heirs rely, is in the specificity of the reservation clauses. In *Miller*, the clauses used vague language such as "subject to all prior reservations," while the reservation clause in *Wilson* specifically set out the fixed amount of the reservation (i.e. one-half interest). In distinguishing its case from *Wilson*, the *Miller* Court stated that in *Wilson*, "[t]he grantee thus received what he bargained for. *Wilson* is distinguishable from the case at bar in that it deals with a specific exception. Although the same 'subject to' language was used in *Wilson*, the specificity of the reservation presents a factually distinguishable situation." *Miller*, 468 So. 2d at 867. "[W]hen certain tracts excepted are specifically described, and it is further recited that they have been previously sold or conveyed, the exception will be good, although the recital is false since it may be rejected, or although the prior conveyance did not effectuate a transfer of the property described therein, or even though the property previously conveyed reverts to the grantor by reason of the grantee in the prior conveyance ceasing to use it for the purpose prescribed in the deed." *Oldham v. Fortner*, 221 Miss. 732, 741, 74 So. 2d 824, 828 (1954) (quoting 26 C.J.S. *Deeds* § 139 c, page 450.)

## IV. ISSUES

**Did the language within the "four corners" of the 1944 Shows to Knight deed unambiguously reserve one-half (½) of the minerals unto the Shows?**

¶8. In cases requiring judicial construction of a deed conveying a mineral interest, the Court seeks to ascertain and effectuate the intent of the parties. The case of *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 352-353 (Miss. 1990), sets out the following three-tiered process which the Court is to utilize in making such a determination: (1) look solely to the language contained within the "four corners" of the instrument; (2) if the language within the instrument's "four corners" is ambiguous, then apply the applicable canons of construction in a discretionary manner; and (3) if the intent of the parties is still unknown, look to extrinsic evidence. "Where [the language within the four corners of the instrument] is clear, explicit, harmonious and free from ambiguity, the Court will look solely to the language used in the instrument itself." *Miller*, 468 So. 2d at 867.

¶9. As previously mentioned, the language used in the 1944 deed from the Shows to Knight said "[I]t is understood by the grantee herein that I have heretofore sold three-fourths (3/4) of all mineral interest in, on or under the above described land." This language clearly and explicitly told W.W. Knight that three-fourths (3/4) of the minerals were already gone, and by signing and accepting delivery of the deed containing this language, he adopted said language as if his own. At that point, the only logical conclusion he could have reached was that he was receiving only one-fourth (1/4) of the minerals. Looking solely at this clear and explicit language, this Court can reach no other determination than that it was the intent of the parties for W.W. Knight to receive one-fourth (1/4) of the minerals. Gladys Knight asserts that this statement in the deed is untruthful. Regardless, it is the understanding between the parties as evidenced by the language in

the deed, and not the truthfulness of the language in the deed, that is most important in this situation. In other words, in seeking the intent of the parties, *Miller* speaks of the clarity and explicitness of the terms in an instrument, not their truthfulness. As the intent of the parties is ascertainable by looking solely to the language within the "four corners" of the 1944 Shows to Knight deed, it is unnecessary to move on to tiers two (2) and three (3) of the *Pursue Energy* test.

### Would it be inequitable to enlarge W.W. Knight's interest in the minerals of the subject tract from one-fourth (1/4) to three-fourths (3/4)?

¶10. Since W.W. Knight had to know that he was receiving a one-fourth (1/4) mineral interest, it must be assumed that he paid the fair market value for a one-fourth (1/4) mineral interest. Gladys Knight argues that it would not be inequitable to enlarge grantee W.W. Knight's one-fourth (1/4) interest to three-fourths (3/4) . However, giving someone a three-fourths (3/4) interest when consideration for only a one-fourth (1/4) interest was given seems quite inequitable, and doing this would result in unjust enrichment. "The doctrine of unjust enrichment . . . applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another, the courts imposing a duty to refund the money or the use value of the property to the person to whom in good conscience it ought to belong." *Hans v. Hans,* 482 So. 2d 1117, 1222 (Miss. 1986) (quoting 66 Am.Jur.2d *Restitution and Implied Contracts*, § 11 (1973)). The Shows to Knight deed represented an agreement wherein the Shows agreed to sell and W.W. Knight agreed to buy all of the surface and one-fourth (1/4) of the minerals under the subject land. There was no legal contract for the remaining three-fourths (3/4) of the minerals under the tract at issue, and enlarging the grantee's interest in the tract at issue would put his heir "in possession of property which in good conscience and justice [s]he should not retain." *Id.*

### Does the warranty in the Shows-Knight deed estop the Shows Heirs from attacking Knight's title?

¶11. Both *Miller* and *Wilson* involved a grantor attacking title which was purportedly conveyed by a warranty deed. In *Miller*, although her lawsuit was unsuccessful, the grantor was allowed to attack the grantee's title. In *Wilson*, the grantor successfully attacked the grantee's title. As prior cases have allowed grantors to attack titles passed by warranty deeds, the Shows heirs are not now estopped from attacking Knight's interest in the tract at issue.

### V. CONCLUSION

¶12. Because the mineral reservation language in the 1944 Shows to Knight deed specifically sets out the amount (three-fourths) of mineral rights which had purportedly already been severed, the case sub judice is factually similar to *Wilson*, not *Miller*. Applying the holding of *Wilson* to the case at bar, the one-half (½) mineral interest in the tract at issue did not pass to W.W. Knight in the 1944 Shows to Knight conveyance. For the foregoing reasons, we hold that the Jones County Chancery Court did not err in its grant of summary judgment in favor of the Shows Heirs, and its judgment is affirmed.

¶13. **AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**