WILSON, J.,
dissenting:
¶ 36, For the reasons I explain below, I would affirm the circuit court’s order granting summary judgment in favor of Sutton as to all claims. Thus, I respectfully dissent.
¶ 37. The premise, of Beasley’s unjust enrichment claim is that. Spraberry mistakenly. cancelled a $700,000 whole-life policy that-named her as the beneficiary when he intended to cancel a $2 million term policy that named Sutton as the beneficiary. I agree with the majority that there is evidence in the record from which a jury could so find. In addition, if Spraberry had been the owner of both policies, paid the premiums on both policies, and had the right to cancel both policies, then I could agree that .Beasley’s unjust enrichment claim should survive summary judgment. If those were the facts, then Sutton’s receipt of the $2 million fairly could be viewed as an unjust windfall, and “good conscience and justice” might require him to “deliver to” Beasley at least what she lost as a result of Spraberry’s mistake. Omnibank of Mantee v. United S. Bank, 607 So.2d 76, 92 (Miss.1992) (quoting Hans v. Hans, 482 So.2d 1117, 1122 (Miss.1986)). That would be a relatively easy ease to decide.
¶ 38. The case before us is much more difficult. The facts are that Spraberry was not the owner and therefore lacked authority to cancel the $2 million policy. The policy named Sutton as the owner (and beneficiary) and provided: “While the insured is living, ... the owner alone has the right to receive all benefits and exercise all rights this policy grants .... ” (Emphasis added.) The policy application, which the policy incorporates by reference, *336 also provided that Sutton would pay the premiums, although Sutton testified that the premiums were actually paid by the clinic that he and Spraberry co-owned.
¶ 39. It is true that Spraberry was a seventy-five percent shareholder in the clinic (Sutton owned the other twenty-five percent) and so, as a practical matter, he likely could have caused the clinic to stop paying the premiums on the policy. However, that would have required a discussion with Sutton, and there is no evidence that such a discussion ever occurred. Moreover, had it occurred, Sutton would have had the option of keeping the policy in force by paying the premiums himself.
¶ 40. On these facts, Sutton’s receipt of benefits under' the policy is not an unjust windfall. It is simply his right as the owner of the policy, and Beasley has no claim — equitable or otherwise — on these funds. The majority’s conclusion that the doctrine of unjust enrichment applies seems to derive from its view that “it is unlikely that Spraberry intended Sutton to receive a total of $5 million upon his death, when Sutton was only two years out of dental school.” However, what “Spraber-ry intended” with regard to the $2 million policy is beside the point because he lacked the authority to cancel it. Thus, even if the $700,000 policy naming Beasley as the beneficiary was cancelled by mistake, Sutton’s policy did not remain in force by mistake. It remained in force because Sutton, not Spraberry or Beasley, owned the policy. Therefore, while Beasley’s inability to recover under the can-celled policy may appear “unjust” in the everyday sense of the word, it does not follow that Sutton has been unjustly enriched. Nor does the law compel him to pay Beasley simply because he was “enriched” pursuant to his own insurance policy and so can afford to pay her.[15] Accordingly, I would affirm the circuit court’s grant of summary judgment on Beasley’s unjust enrichment claim.
¶ 41. The gravamen of Beasley’s equitable and promissory estoppel claims is that after Spraberry died, Sutton made statements that led Beasley to believe that he would pay her $700,000, and that Beasley then bought a house in reliance on Sutton’s statements. I agree with the circuit judge that Sutton is entitled to summary judgment on these claims because Beasley failed to create a genuine issue of material fact on the element of detrimental reliance.[16] Beasley testified that Sutton made clear that he would not pay her any additional money after she had signed a contract on the house but before she closed. She testified that although she and her husband “did, in some way, count on” the money, they “had already fallen in love with the new home, ... had made an offer and ... were moving forward” despite Sutton’s alleged change of position. She acknowledged that they qualified for a home loan that was not based on Sutton’s alleged promises and that they successful *337 ly closed on the home, at a purchase price of $305,000, without assistance from Sutton. Theré is no evidence in the record that Sutton caused Beasley to breach her real estate contract, that she has been unable to make payments on the house, or that she has suffered any other detriment as a result. Thus, the most that the record suggests is that Sutton induced Beasley to purchase a new house that she had “fallen in love with” and could afford. I agree with the circuit judge that even if this is reliance, it is not detrimental reliance, Accordingly, I would affirm the grant of summary judgment on Beasley’s estoppel claims as well.
CARLTON, J., JOINS THIS OPINION.

. As the Supreme Court emphasized in Om-nibank,
A person is enriched when he receives an economic benefit.... What is important and what careless readers often fail to remember is our law accepts no value condemning pursuit of wealth, so long as it be done within legal parameters. There is nothing inherently unjust about enrichment. The principle does not proscribe mere enrichments, only those objectively seen as unjust.
Omnibank, 607 So.2d at 92; see also 1 Dan B. Dobbs, Law of Remedies § 4.1(2) at 557 (2d ed. 1993) ("The fundamental substantive basis for restitution is that the defendant has been unjustly enriched_”).

. "Detrimental reliance is an element of both promissory estoppel and equitable estop-pel.” Noble v. Wellington Assocs., Inc., 145 So.3d 714, 721 (¶ 34) (Miss.Ct.App.2013) (quotation marks omitted).